CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 20, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **JAMES PORTER MARINE, JR.**, | ) | |
| Plaintiff, | ) | Case No.7:22cv00682 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SARAH EVES, et al.**, | ) | By:  Pamela Meade Sargent |
| Defendants. | ) | United States Magistrate Judge |
| | ) | |

Plaintiff, James Porter Marine, Jr., ("Marine") a Virginia inmate proceeding pro se, filed this civil rights Complaint against jail officials, pursuant to 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his serious medical needs after he was bitten by a police dog.  The two defendants have filed a Motion to Dismiss, (Docket Item No. 30), and Marine has responded by moving for leave to file an Amended Complaint, (Docket Item No. 35) ("Motion to Amend"),[1] (collectively, "Motions"), making the matter ripe for consideration.  After review of the record, the court concludes that the Motions must be granted in part and denied in part.

I.   Background

In the initial Complaint, Marine sued Sarah Eves, ("Eves"), and Wellpath.[2] While Marine was confined at the Henry County Adult Detention Center,

---

[1]  Marine filed an Amended Complaint that was docketed as a motion to amend.

[2]  Marine's initial Complaint identified Eves' employer as Medpath, but the court later granted Marine's Motion to Amend to change the employer's name to Wellpath.

("HCADC"), Eves allegedly removed stitches from his dog bite wounds after only two days, contrary to doctor's orders. As relief, Marine seeks apologies and monetary damages.

Eves and Wellpath filed the Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Marine's allegations did not state claims against them that were actionable under § 1983. Marine then submitted the Motion to Amend, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, seeking to add three defendants: Henry County Sheriff Lane Perry, ("Sheriff Lane"), First Lieutenant Redd, ("Lt. Redd"), and Lieutenant Reynolds, ("Lt. Reynolds"). This new submission states that it is "supplemental pleadings." (Docket Item No. 35 at 1.)

For purposes of addressing the Motion to Dismiss and the Motion to Amend, the court recounts the facts alleged in the Complaint and the proposed Amended Complaint, ("Amended Complaint") and accepts them as true, except where otherwise noted. *See Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). On August 19, 2022, a police dog bit Marine on his legs and his left torso. Law enforcement officers transported him to a hospital where he "rec[ei]ved stitches and was mandated removal in 10 to 14 days."[3] (Docket Item No. 35 at 4.) On August 21, 2022, defendant Sara Eves, "NP Head Nurse" at HCADC,[4] had Marine brought to the medical unit and removed his stitches. (Docket Item No. 35 at 2, 4.) Marine asserts that Eves, "an employee of Wellpath," (Docket Item No. 35 at 2), "removed stitches before enough time for them to heal, causing soreness, infection and a very

---

[3] Marine claims that at "SOVAH" hospital, he received "stitches in [his] left leg on the early morning of 8-19-22 for serious dog bites." (Docket Item No. 1 at 2.)

[4] Marine refers to Eves as an N.P., an abbreviation for nurse practitioner. However, according to the Brief in Support of the Motion to Dismiss, Eves is a P.A. — a physician's assistant.

2

much longer healing process." (Docket Item No. 1 at 2.) Marine claims that he told Eves, the "E.R. doctor said [the stitches] would need to stay in for [10 to 14 days], but she refused to listen." (Docket Item No. 1 at 2.) He alleges that she "disregarded [his] medical orders and agonizing, protested pleas not to remove [his] unhealed stitches." (Docket Item No. 35 at 4.) Marine alleges that Eves's actions caused "'debilitating physical impairments' due to [his] injuries not being able to heal." (Docket Item No. 35 at 4.) The wounds allegedly became "infected, swollen, and oozing with blood and yellow and green pus." (Docket Item No. 35 at 5.) Marine also alleges that Eves "failed to put notes or medical orders in [his] file" for a month and a half. (Docket Item No. 1 at 2.) Marine asserts that a "new doctor, Dr. Jenkins, verbally admitted that she handled [Marine's] situation wrong." (Docket Item No. 1 at 2.)

Marine alleges that Wellpath "has not handled [his] situation appropriately or adequately," leaving him with a feeling that medical malpractice occurred. (Docket Item No. 1 at 2.) He also alleges that Wellpath allowed Eves to act as she did and also refused to provide pain medication or outside medical care, after receiving repeated complaints from Marine and pleas from his family. (Docket Item No. 35 at 5.)

Marine alleges that Sheriff Perry "was made directly aware through [Marine's] request for help, complaints, and [his] grievances," but "didn't care about [Marine's] further injuries and unhealing, infected dog bites" due to the alleged mistreatment by Eves and Wellpath. (Docket Item No. 35 at 5.) Perry allegedly told Marine that "due to [his] indigency, [he] wouldn't rec[ei]ve needed outside medical care." (Docket Item No. 35 at 6.)

Lt. Redd allegedly learned of Marine's medical needs through his grievance, which Lt. Redd denied as unfounded. (Docket Item No. 35 at 6.) Lt. Reynolds replied to Marine's Level II grievance appeal and failed to order the medical staff to

3

provide Marine with wound care from a medical provider outside the facility as Marine had requested. (Docket Item No. 35 at 6.)

Marine also alleges that Eves's actions constituted medical malpractice, a claim he asserts under the supplemental jurisdiction of the court, pursuant to 28 U.S.C. § 1367. Marine alleges that her actions caused him "to suffer blood clots in [his] legs, to date, unhealed wounds and physical and mental impairments." (Docket Item No. 35 at 7.) Marine allegedly must walk with a cane and has developed a subcutaneous mass in his torso where the dog bit him. (Docket Item No. 35 at 7.)

Marine claims that later medical treatment he has received was made necessary because of the defendants' failure to provide him access to proper medical care at HCADC from August 19, 2022, to February 15, 2023. (Docket Item No. 35 at 8.) He has submitted a one-page "After Visit Summary" from Sentara RMH Medical Center Emergency Department dated March 10, 2023. (Docket Item No. 28-1.) It notes diagnoses of deep vein thrombosis of left profunda femoris vein, subcutaneous mass of abdominal wall, and enlarged pulmonary artery. The summary states that Marine should follow up with vascular surgeon within one week, be tested for a possible clotting disorder and recommends "wound care if the dog bites are not healing adequately." (Docket Item No. 28-1.) The summary also notes a prescription for a blood thinner medication. (Docket Item No. 28-1.)

At some point, Marine alleges that he was seen by a general surgeon regarding a "[subcutaneous] mass in [his] torso from the dog bites." (Docket Item No. 35 at 7.) He also was allegedly seen by a vascular surgeon and a primary care provider for pain management and treatment for thrombophlebitis. (Docket Item No. 35 at 8.)

Liberally construing Marine's allegations in the Amended Complaint, his claims contend that (1) Eves (a Wellpath employee) defied a previous doctor's orders by removing Marine's stitches too early; (2) when complications arose from

4

Eves's action, Eves and Wellpath failed to provide pain medication and other treatment by medical providers outside the HCADC facility; and (3) in response to Marine's verbal and written complaints and grievances seeking outside medical care, the supervisory defendants failed to intervene to order that such care be provided. As relief in the Amended Complaint, Marine seeks monetary damages and declaratory and injunctive relief.[5]

As stated, Eves and Wellpath, through counsel, have moved to dismiss Marine's claims against them. In response to their motion, Marine filed his proposed Amended Complaint. The other defendants named in the Motion to Amend have not been served. Because the court concludes that the proposed amendments against these newly named defendants are futile, the court will summarily dismiss the claims against them.

## II. Discussion

### A.

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's pleading. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*,

---

[5] In the Amended Complaint, Marine also alleges that the defendants somehow failed to provide appropriate medical care to three other inmates, apparently believing that these alleged failings somehow support his claims that the defendants violated his constitutional rights. (Docket Item No. 35 at 8.) Marine does not state facts showing how the medical problems these other inmates experienced has any bearing on his claims against the defendants he has named.

5

7 F.3d 1130, 1134 (4th Cir. 1993). The complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and it must allege facts specific enough to raise a right to relief above the speculative level.[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, the court is required to liberally construe complaints filed by plaintiffs proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *See Erickson*, 551 U.S. at 94; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This requirement of liberal construction does not mean, however, that the court should ignore a clear failure to plead facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

B.

As an initial matter, the court concludes that Marine's Motion to Amend must be denied as to his attempts to add as defendants supervisory jail officials who have no medical expertise. The proposed Amended Complaint is futile as to the claims alleged against these defendants.

First, the supervisory officials -- Sheriff Perry, Lt. Redd and Lt. Reynolds -- cannot be held automatically liable for constitutional violations committed by their subordinates, as respondeat superior does not apply in § 1983 actions. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "[L]iability will only lie where it is affirmatively shown that the official charged acted personally" to deprive the plaintiff of constitutional rights. *Alston v. Robinson*, No. 7:22CV00234, 2022 WL

---

[6] The court has omitted citations, internal quotation marks, and/or alterations throughout this Opinion, unless otherwise noted.

4237495, at *1 (W.D. Va. Sept. 14, 2022). Thus, to the extent that Marine asserts that Sheriff Perry, Lt. Redd and Lt. Reynolds are automatically liable for the alleged deliberate indifference by Eves and Wellpath, he is mistaken. Similarly, to the extent that Marine brings this action seeking monetary damages against the supervisory defendants in their official capacities, such relief also is not available via § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

Second, Marine fails to state facts showing the elements necessary to a claim of supervisory liability against these defendants, based on any alleged personal involvement in denial of medical care. To hold a supervisory official liable for misconduct by a subordinate employee, the plaintiff must state facts showing that: (1) the defendant had actual or constructive knowledge that the subordinate's misconduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the defendant's "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) "an affirmative causal link" existed between the defendant's inaction and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

Moreover, when subordinate's alleged wrongdoing relates to medical or mental health care, a supervisor with no personal expertise in the medical arena is entitled to rely on the medical judgments of the medical and mental health providers overseeing the plaintiff's course of treatment. *See Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that nonmedical supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel). Such mere supervisory officials "cannot be liable for the medical staff's diagnostic decisions." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). It is not the function of the court, or prison administrators, to second guess the good faith

treatment decisions of licensed medical providers. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).

Marine's Amended Complaint asserts that Sheriff Perry, Lt. Redd and Lt. Reynolds have deprived him of medical care. He does not allege, however, that any of these individuals had any personal involvement in determining when the stitches should be removed from Marine's dog bite wounds. These defendants merely responded to grievances or appeals about Eves's actions, after the fact. Thus, they can bear no responsibility for Eves's decision to remove the stitches when she did. Moreover, Marine fails to state facts showing that these individuals have medical expertise to determine what treatment was medically necessary for the conditions that Marine allegedly developed after Eves's actions. His allegations indicate that Wellpath employs providers like Eves to determine inmates' needs for medical care and to dispense such care. Marine does not state facts showing that the medical staff at HCADC failed to provide him with any treatment after removal of the stitches. Rather, Marine asserts that the supervisory defendants should have ensured that he received different treatment by outside providers, as he desired. It is well established that supervisory jail staff may rightfully rely on an inmate's medical providers to determine the appropriate treatment for an inmate's medical condition. *See Miltier*, 896 F.2d at 854.

Marine claims that Sheriff Perry said he could not "receive needed outside medical care" because of his "indigency." (Docket Item No. 35 at 6.) This comment in the Amended Complaint is not dated, nor does it offer any details of what outside care Marine believed he needed for any particular symptom. Marine also fails to state facts showing that his medical providers at HCADC had diagnosed him with any condition requiring treatment from an outside medical facility or professional.

For the stated reasons, the court cannot find any viable § 1983 claim against proposed defendants Sheriff Perry, Lt. Redd and Lt. Reynolds arising from the

8

allegations in the Amended Complaint. Therefore, to the extent that Marine seeks to add these defendants to this case, his Motion to Amend will be denied. The court will separately address the claims against the other defendants, Eves and Wellpath.

C.

The court also concludes that the Motion to Dismiss must be granted as to Marine's claims against Wellpath. To summarize, Marine has only vaguely alleged that Wellpath did not handle his situation after the dog bites "appropriately or adequately" and that he feels there was "medical malpractice because [Wellpath failed] to do the job medically." (Docket Item No. 1 at 2.) In the Amended Complaint, Marine alleges that Eves was employed by Wellpath at the time she served as his medical provider at HCADC. (Docket Item No. 35 at 2.) These conclusory allegations simply do not suffice to state an actionable claim against this defendant.

To hold Wellpath responsible for a §1983 violation, Marine must state facts showing that Wellpath had an official policy or custom that caused Marine to receive the allegedly inadequate medical care of which he complains. *See Kline v. Wicomico Cnty.*, No. CV BPG-21-2653, 2022 WL 1538625, at *3 (D. Md. May 16, 2022) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1385-88 (4th Cir. 1987)). In other words, Marine must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in this case, namely, the allegedly inadequate medical care that Eves provided. *Kline,* 2022 WL 1538625, at *3.

As stated, in the Amended Complaint, Marine does allege that Eves acted as an employee of Wellpath when she removed Marine's stitches. Marine does not state facts showing, however, that Eves's actions in removing the stitches as soon as she did (or her alleged failure to make appropriate notes in his record) were actions

9

she took pursuant to any policy implemented by Wellpath. Indeed, Marine states no facts concerning Wellpath policy or any other direct involvement by this entity in his medical care while he was incarcerated at HCADC. Marine's vague assertions that Wellpath committed medical malpractice or otherwise acted inappropriately with regard to Marine's medical needs are merely conclusory statements unsupported by facts. In addressing a motion to dismiss, this court need not treat as true such generalizations without factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the reasons stated, the court will grant the Motion to Dismiss as to Wellpath.

D.

Liberally construing Marine's allegations in the Complaint and the Amended Complaint, however, the court concludes that his claim against defendant Eves survives a motion to dismiss under Rule 12(b)(6). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). First, "[o]bjectively, the inmate's medical condition must be serious — one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178. Marine's dog bite wounds, which required stitches, arguably qualify as a serious medical need, as do the conditions he allegedly developed as a result of those wounds.

Second, Marine must allege the subjective aspect of the constitutional standard. An official is deliberately indifferent to an inmate's serious medical needs

only when he or she subjectively "knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference standard for culpability is higher than mere negligence, and consequently, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction. *Jackson*, 775 F.3d at 178.

Taking Marine's facts as true, the court concludes that he meets the subjective aspect of the standard for purposes of the Motion to Dismiss. He allegedly informed Eves that the doctor who applied the stitches intended them to remain in place for 10 to 14 days, and Marine himself told Eves that he did not want the stitches removed because too little healing of the wounds had occurred. Marine also alleges that after the early removal of the stitches, his dog bite wounds healed slowly and became infected. He also claims that he suffered other long-term physical effects related to the dog bite wounds, to the extent that months later, a doctor recommended additional wound care if the bites were not healing. A reasonable fact finder could determine from these allegations that Eves was deliberately indifferent — that she removed the stitches while knowing that the doctor who applied them recommended waiting longer for removal and that healing had not progressed. The court recognizes that Eves, on summary judgment, may be able to present facts showing that she reasonably believed removing the stitches when she did would not pose an excessive risk of harm to Marine. At this stage of the litigation, however, the court cannot dismiss Marine's claim under Rule 12(b)(6) as Eves requests. For these reasons, the court will deny the Motion to Dismiss as to Marine's claims against defendant Eves.

11

### III. CONCLUSION

In accordance with the foregoing, the court will grant the Motion to Amend in part and deny it in part. Specifically, the court will grant the Motion to Amend and allow the proposed Amended Complaint to the extent that it provides additional details regarding the claims against defendants Eves and Wellpath, but the court will deny the Motion to Amend to the extent that it seeks to add Sheriff Perry, Lt. Redd and Lt. Reynolds as additional defendants. The court also will grant the Motion to Dismiss in part and deny it in part. Specifically, the court will grant the Motion to Dismiss as to Wellpath, but will deny the Motion to Dismiss as to the claims against defendant Eves.

An appropriate Order will be entered.

**ENTERED:** March 20, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE